IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FKS AKKAD CAPITAL GP, LLC, ) <br> as the General Partner of FKS ) <br> AKKAD CAPITAL, LP and ) <br> STEPHEN SHAYA, ) <br>   ) <br>   Plaintiffs, ) <br>   ) <br>   v. ) <br>   ) <br> JOHNFK MEDICAL CO. INC. a/k/a ) <br> FKS MEDICAL GROUP, and ) <br> FEI-KAI SYU, ) <br>   ) <br>   Defendants. ) | Civil Action No. 20-952-CFC |

## MEMORANDUM ORDER

Plaintiffs have filed a Motion for Entry of Default Judgment. D.I. 33. They ask me to "[e]nter a Default in favor of Plaintiffs and against Defendants" under Federal Rule of Civil Procedure 55(a) and "[e]nter a Default Judgment" under Rule 55(b). D.I. 33 at 6.

1. Rule 55(a) provides that, "[w]hen a party . . . has failed to plead or otherwise defend, . . . the clerk must enter the party's default." Rule 55(b) provides for the entry of a default judgment against a party in default.

2. "[T]he district court's power to maintain an orderly docket justifies the entry of a default against a party who fails to appear at trial." *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 918 (3d Cir. 1992). And a district court

can "impose[]a default judgment against the defendants for failure to comply with [the court's] own unambiguous orders to obtain substitute counsel, file a pretrial memorandum, and respond to the plaintiffs' discovery requests." *Id.* (citations omitted).

3. In deciding whether to impose a default as a sanction against a party, a district court must consider the six so-called *Poulis* factors:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party o[r] the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

*Id.* at 919 (quoting *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984)); *see also Knoll v. City of Allentown*, 707 F.3d 406, 409 (3d Cir. 2013) ("We have required consideration of the *Poulis* factors . . . when a district court enters a default judgment pursuant to Rule 55(b) as a sanction for failure to plead or otherwise defend." (citation omitted)). "[A] court should consider all six [*Poulis*] factors but need not find all six to award sanctions." *United States v. Brace*, 1 F.4th 137, 143 (3d Cir. 2021).

4. Here, Plaintiffs' July 16, 2020 Complaint alleges that Defendant FKS Medical Group breached a series of agreements among the parties to establish an investment fund, D.I. 2 ¶¶ 69–82; that Defendants have improperly and unjustly

2

retained possession of $100,000 that Defendant Fei-Kai Syu fraudulently induced Plaintiff Stephen Shaya to wire to Defendants, D.I. 2 ¶¶ 83–100; and that Shaya's reliance on Fei-Kai Syu's misrepresentations has caused Shaya professional embarrassment, D.I. 2 ¶¶ 89–94. Defendants entered two appearances on November 30, 2020 after I permitted Plaintiffs "to effect original service of process on Defendants" via international mail and email on November 5, 2020. D.I. 7; D.I. 8; D.I. 9.

5. After Defendants substituted counsel in December 2020, D.I. 11, Defendants filed their Answer to the Complaint on January 11, 2021. D.I. 14. On July 2, 2021, Defendants' counsel requested permission to withdraw based on four months of unpaid fees and difficulty obtaining information from Defendants. D.I. 18 at 2. Counsel explained that they had maintained communication with Defendants via "a secondary email address provided (fkslifemedical@gmail.com)." D.I. 18 at 2.

6. Plaintiffs did not oppose the request to withdraw but asked that I permit Plaintiffs to effect service going forward via the above Gmail email address. D.I. 19. I granted counsel's request to withdraw and Plaintiffs' requested method of future service. D.I. 20. On May 6, 2022, I ordered FKS to "obtain counsel on or before May 27, 2022." D.I. 30 at 2. Plaintiffs served that Order on Defendants via email. D.I. 32.

3

7. As of this date, Defendants have failed to obtain counsel.

8. Plaintiffs filed this Motion for Entry of Default Judgment on June 14, 2022. D.I. 33.

9. Because FKS has failed to comply with an unambiguous order to find substitute counsel, an entry of default under Rule 55(a) may be appropriate. *Hoxworth*, 980 F.2d at 918. I did not, however, give Fei-Kai Syu a similar order to appear, since an individual defendant may appear pro se. Accordingly, entry of default against Fei-Kai Syu is premature.

10. With respect to FKS, I find that, considering the six *Poulis* factors in their totality, entry of default against FKS is warranted.

11. ***Poulis* Factor 1**: "Defendants ha[ve] personal responsibility for the conduct of the litigation after their attorney withdr[aws] . . . ." *Hoxworth*, 980 F.2d at 920. Once Defendants' attorneys withdrew on July 29, 2021, Defendants assumed the responsibility to continue to defend themselves. Defendants have failed to respond to Plaintiffs' discovery requests, D.I. 21 at 3 n.1, or Plaintiffs' summary judgment motion, D.I. 29 at 1. Thus, this factor favors entry of default.

12. ***Poulis* Factor 2**: Plaintiffs have had to seek discovery, *see, e.g.*, D.I. 21 at 3 n.1, and otherwise prosecute their case without the cooperation of Defendants. This has prejudiced Plaintiffs because, for example, after Defendants failed to respond to Plaintiffs' Requests for Admission, D.I. 21 at 3 n.1, I agreed

4

with Magistrate Judge Hall and denied Plaintiffs' Motion for Summary Judgment, D.I. 30; that Motion relied upon Defendants' failure to respond, D.I. 29 at 2. Magistrate Judge Hall explained both that "the record does not reflect that the parties have ever conferred as required by Federal Rule of Civil Procedure 26(f)," and that she was "skeptical of the propriety of granting summary judgment against an unrepresented corporate entity where the record support for the movant's assertions of fact consists of defaulted requests for admission . . . ." D.I. 29 at 2. Defendants' failure to appear left Plaintiffs with no opportunity to rely on more fulsome discovery. Thus, the second factor favors entry of default.

13. ***Poulis* Factor 3**: Defendants changed counsel from Duane Morris to Greenberg Traurig, D.I. 11, and the parties' agreed to extend Defendants' time to file an answer, D.I. 12. Greenberg Traurig then asked to withdraw as counsel, in part, because the firm was "unable to gather the information necessary to continue" with its representation. D.I. 18 at 2. And Defendants subsequently failed to answer Plaintiffs' Requests for Admissions. D.I. 29 at 2. This Court and Plaintiffs have offered Defendants the chance to participate in this case, and Defendants' failure to engage (or even, since July 2021, to appear) has inhibited the progress of this case. Thus, the third factor favors entry of default.

14. ***Poulis* Factor 4**: I lack the information necessary to determine whether Defendants' conduct in failing to respond is willful or in bad faith. Accordingly, the fourth factor is neutral.

15. ***Poulis* Factor 5**: No alternative sanction to the grant of default is available at this stage in the case. If Defendants make an appearance in this case, I will hear the parties on potential alternative sanctions. But, at this point, the fifth factor favors entry of default.

16. ***Poulis* Factor 6**: Defendants only asserted defense against Plaintiffs' breach of contract claim lacks merit. The Complaint alleges that FKS declined to make an initial $100 million investment and repudiated its obligation to make a total investment of $1 billion, among other allegations. D.I. 2 ¶¶ 69–82. The parties' Formation Agreement—signed by Fei-Kai Syu on behalf of FKS—provides in Exhibit A that "FKS shall commit to invest $1 billion USD" and that FKS "shall make an initial capital contribution . . . on or before January 31, 2020 . . . of $100 million USD . . . ." D.I. 2-2, Ex. A at 1. And the Formation Agreement "shall be governed by the internal laws of the State of Delaware without regard to principles of conflicts of law." D.I. 2-2 at 2. In their Answer, Defendants allege repeatedly that various agreements were "not negotiated and instead drafted and controlled by Plaintiffs and Fox Rothschild LLP when Defendants were unrepresented by counsel." D.I. 14 ¶¶ 21–24, 38–43, 46–57.

6

Defendants do not allege fraud, mistake, or conflict with public policy; they appear, instead, to allege invalidity for unconscionability. *See, e.g., Stewart v. Stewart*, 41 A.3d 401, 405–06 (Del. 2012) (finding an "overreaching" alimony agreement with an unrepresented spouse unconscionable). Under Delaware law,

> [u]nconscionability is . . . used sparingly. Traditionally, an unconscionable contract is one which no man in his senses and not under delusion would make on the one hand, and as no honest or fair man would accept, on the other. But mere disparity between the bargaining powers of parties . . . will not support a finding of unconscionability. . . . There is no deprivation of meaningful choice if a party can walk away from the contract.

*Ketler v. PFPA, LLC*, 132 A.3d 746, 748 (Del. 2016) (internal quotation marks, citations, and footnotes omitted). Here, the parties both outline a plan to establish an investment fund "to carry out the purposes of the[ir] Partnership" and "represent" that the parties find the agreement fair "based solely upon" their own judgment and the statements in the contract. D.I. 2-2 at 1. That a party prepared to make a $1 billion investment and complete fund formation within three weeks of signing a Memorandum of Understanding, D.I. 2-1; D.I. 2-2 at 1, chose to forgo legal representation is facially odd. But, if FKS was prepared to provide $1 billion in investments, common sense indicates that it could dictate terms (or, at the very least, be able to walk away). In short, the contract Plaintiffs propound does not appear unconscionable, and FKS's defense lacks apparent merit.

17.     I lack, however, sufficient information to determine whether Defendants have any meritorious defenses to Plaintiffs' conversion, fraud, and unjust enrichment claims. Plaintiffs allege—and Defendants deny—that Fei-KaiSyu's misrepresentations induced Shaya to wire $100,000 to FKS, D.I. 14 ¶ 84; that Defendants have refused to return the funds and "hold those funds without authorization," D.I. 14 ¶ 87; that Fei-Kai Syu's misrepresentations were knowingly or recklessly false, D.I. 14 ¶ 91; and that those funds have unjustly enriched Defendants, D.I. 14 ¶ 100. I have no additional information about the merit of Defendants' defenses, and it remains unclear whether Plaintiffs can support their conversion, unjust enrichment, and fraud claims. *See, e.g.*, D.I. 29 at 2–3 (explaining insufficiency of the evidence of record). When I consider all of Plaintiffs' allegations—and since the Third Circuit disfavors entries of default—I find that the sixth factor is neutral.

18.     Since the first, second, third, and fifth *Poulis* factors heavily favor an entry of default against FKS and since I "need not find all six [*Poulis* factors] to award sanctions[,]" *Brace*, 1 F.4th at 143, I find that, taken as a whole, the *Poulis* factors weigh strongly in favor of entry of default against FKS. Thus, I will direct the Clerk to enter default against FKS.

19.     I will further order Plaintiffs to serve the entry of default and this Memorandum Order upon Defendants at the Gmail email address noted above.

8

Plaintiffs provide no evidence that Defendants have responded to service via email; Defendants admitted that Fei-Kai Syu has "a residence located at 7186 Schilling Avenue, Apt. 70, San Diego, CA 92126[,]" D.I. 14 ¶ 9; and Greenberg Traurig communicated with Defendants "through Defendant Fei-Kai Syu . . . ." Therefore, I will also order Plaintiffs to serve the entry of default and this Memorandum Order upon Defendants via U.S. mail with restricted delivery and return receipt at Fei-Kai Syu's San Diego, California address. If FKS fails to appear via counsel in this case within 21 days of the date that Plaintiffs file proof of service upon Defendants and the return receipt, Plaintiffs may file a motion for default judgment against FKS.

20. I will also order Fei-Kai Syu to appear again in this case—either pro se or via counsel—within 21 days of the date that Plaintiffs effectuate service of the entry of default and this Memorandum Order upon Defendants. Should Fei-Kai Syu fail to appear within 21 days of the date that Plaintiffs file proof of service and a return receipt with the Court, Plaintiffs may seek an entry of default against Fei-Kai Syu.

\* \* \* \*

NOW THEREFORE, at Wilmington on this Eleventh day of July in 2022, having reviewed Plaintiffs' Motion for Entry of Default Judgment (D.I. 33), IT IS HEREBY ORDERED that

9

1. Plaintiffs' Motion for Entry of Default Judgment (D.I. 33) is GRANTED IN PART and DENIED IN PART;

2. The Clerk shall enter Default against Defendant JohnFK Medical Co. Inc. a/k/a FKS Medical Group;

3. Plaintiffs shall serve both this Memorandum Order and the Clerk's entry of default upon both FKS and Defendant Fei-Kai Syu via certified U.S. mail with restricted delivery and return receipt, at 7186 Schilling Avenue, Apt. 70, San Diego, CA 92126, and via email at fkslifemedical@gmail.com; and

4. Fei-Kai Syu shall appear in this case within 21 days of the service of this Memorandum Order.

_____
COLM F. CONNOLLY
CHIEF JUDGE
